**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(CIVIL DIVISION)**

|  |  |
|---|---|
| ROY MITCHELL, JR.<br>908 Hall Station Drive<br>Bowie, MD 20721,<br><br>*Plaintiff,*<br><br>v.<br><br>SONNY PERDUE,<br>Secretary,<br>U.S. Department of Agriculture,<br><br>*Defendant.* | Civil No.:_____<br><br><br>Jury Demanded |

## COMPLAINT

**COMES NOW** the Plaintiff Roy Mitchell, by and through his undersigned counsel, and sues Defendant Sonny Perdue, Secretary, U.S. Department of Agriculture for the cause of action stated as follows:

### INTRODUCTORY STATEMENT

1. Plaintiff Roy Mitchell ("Plaintiff" or "Mr. Mitchell") brings this civil action pursuant to the Rehabilitation Act of 1973, 29 U.S.C. 794 ("the Rehabilitation Act") and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq. for relief based upon being subjected to a hostile work environment and discriminatory treatment on the basis of his disability and retaliation for prior protected activity.

2. Defendant, Sonny Perdue, Secretary, U.S. Department of Agriculture ("Defendant") discriminated against Plaintiff by subjecting him to discriminatory treatment on

1

the basis of his disability denied him a reasonable accommodation based on his disability and retaliated against Plaintiff and subjected him to a hostile work environment during the course of his employment with the U.S. Department of Agriculture.

## PARTIES

3. Plaintiff Roy Mitchell is currently domiciled at 908 Hall Station Drive, Bowie, MD 20721, and is a United States citizen. At all relevant times, Mr. Mitchell was an employee of the U.S. Department of Agriculture.

4. Defendant Sonny Perdue is being sued in his official capacity as the Secretary of the U.S. Department of Agriculture. The U.S. Department of Agriculture is a Department of the United States Government, and is headquartered at 1400 Independence Avenue, S.W. Washington, DC 20250.

5. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of its employment, under the theory of *Respondeat Superior*.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Complaint pursuant to 29 U.S.C. Section 791, Section 201 of the Congressional Accountability Act and pursuant to Section 2000 *et.* and 28 U.S.C. Sections 1331, 1337 and 1343, §1367, and 42 U.S.C §§ 2000e-5. Venue is appropriate and based on the fact that a substantial part of the actions complained herein are the result of actions and employment practices of Defendant, a federal government Agency that operates within the District of Columbia.

7. Venue is proper in the District of Columbia under 42 U.S.C. § 2000e-5(f)(3), incorporated in 42 U.S.C. § 2000e-16(d), because the events giving rise to the claims

occurred in the District of Columbia, and because the relevant employment records are in the District of Columbia.

## EXHAUSTION OF REMEDIES

8. Plaintiff has exhausted all of his administrative remedies related to this case.

9. On or about June 13, 2016, Plaintiff timely initiated EEO contact for discrimination and hostile work environment based on disability and retaliation.

10. On or about August 17, 2016, the Defendant issued Plaintiff a Notice of Right to File a Discrimination Complaint.

11. On or about September 1, 2016, Plaintiff timely filed a Formal EEO Complaint against the Defendant on the basis of disability discrimination and reprisal.

12. On or about August 17, 2016, the Defendant issued an Acknowledgement Letter regarding the Defendant's receipt of the Discrimination Complaint.

13. On or about September 6, 2016, the Defendant issued an Acceptance Letter regarding the EEO Complaint.

14. On or about October 28, 2016, Plaintiff sought to amend his complaint. On or about November 21, 2016, the Defendant amended Plaintiff's Claims to reflect the "Claims and Issues" referenced *supra*.

15. On or about February 3, 2017, the Defendant completed its ROI.

16. On or about March 24, 2017, Plaintiff timely filed his Request for an EEOC Hearing.

17. On or about July 6, 2018, EEOC Administrative Judge McEvoy issued a *Notice of Proposed Summary Judgment*.

18. On or about October 3, 2018, EEOC Administrative Judge McEvoy issued a *Decision and Order Entering Judgment* in favor of the Defendant.

19. On or about November 5, 2018, the Defendant issued a *Final Order* fully implementing the Decision of EEOC Administrative Judge McEvoy.

20. On or about November 13, 2018 Plaintiff received the Defendant's Final Order and Notice of Right to File a Civil Action.

21. Plaintiff timely files this civil action within ninety (90) days of receipt of the Defendant's *Final Order*.

## FACTS

22. At all relevant times herein, Plaintiff served as an IT Specialist, GS-2210-13 at the AMS, IT, at the Defendant's location in Washington, D.C.

23. Plaintiff has worked in his current position for twenty (20) years and for the Defendant for twenty-eight (28) years.

24. At all relevant times herein, Plaintiff's first level supervisor was Cedric McLaurie (hereinafter "McLaurie"), Director of AMS Service Desk and his second level supervisor was Judith Dudley (hereinafter "Dudley"), Deputy CIO.

25. In his position as an IT Specialist, Plaintiff was responsible for Technical Service Support, serving as an Information Security Officer, Team Lead, Authentication Lead as well as performing all duties related to IT Work.

26. Plaintiff suffers from physical and mental disabilities and is disabled within the meaning of the Rehabilitation Act of 1973.

27. In or about May 2016, Plaintiff suffered a stroke and as a result, the left side of his body was numb. This was Plaintiff's physical disability.

28. Plaintiff's mental disability is that he suffers from anxiety and depression.

29. In or about May or early June 2016, Mitchell had previously alerted his managers to what he perceived to be discrimination as a result of his disabilities.

30. In or about March 2015, Plaintiff told McLaurie that he suffered a stroke and as a result he also suffered from diagnosed anxiety.

31. Plaintiff provided medical documentation to the Defendant confirming his disabilities.

32. In or about June 2016, per his doctor's recommendation, Plaintiff requested to telework for four (4) to five (5) days per week. Plaintiff made this request to McLaurie.

33. In response to Plaintiff's request to telework four (4) to five (5) days per week, as recommended by Plaintiff's medical professional, on a conference call with multiple other people present, McLaurie proposed a telework agreement for two (2) days per week.

34. McLaurie's recommendation that Plaintiff be granted telework two (2) days per week, rather than four (4) to five (5) times per week was in contravention to Plaintiff's doctor's recommendation. Moreover, the four (4) to five (5) days per week could not have caused Defendant a hardship.

35. The Defendant's reasonable accommodation specialists told McLaurie that it was policy to allow Mitchell to telework as requested.

36. However, McLaurie, proceeded with his own plan to only allow two (2) days per week of telework.

37. The denial of Plaintiff's request for a reasonable workplace accommodation was discriminatory because Plaintiff was entitled to a workplace accommodation, his requests were

reasonable and Plaintiff's other co-workers were allowed to telework, were not denied leave nor were they improperly placed on AWOL status, when they utilized the Defendant's leave policy.

38. In or about May 2016, Plaintiff was unfairly placed on leave restriction by his supervisor McLaurie.

39. In or about May 2016, Plaintiff received a Fully Successful mid-year performance evaluation from McLaurie.

40. In or about May 2016, Plaintiff met with McLaurie and Director Lisa Dukeman (hereinafter "Dukeman") regarding the mid-year evaluation.

41. Plaintiff was not provided with areas where he needed improvement regarding his mid-year evaluation.

42. During his mid-year evaluation meeting, Plaintiff expressed to McLaurie and Dukeman that he did not feel well and sought to leave the room, but his pleas were ignored. As a result, Plaintiff left the room and McLaurie chased after him, yelling at Plaintiff that he "was not even a man" or words to that effect, scaring Mitchell badly.

43. The May 2016, the Fully Successful rating given to Plaintiff did not fairly rate him given his hard work and dedication. Moreover, prior to going on leave with this disability Plaintiff received Outstanding and Superior ratings.

44. In or about May and June 2016, after Plaintiff suffered his stroke, he asked to go on a detail. Shortly after requesting to go on said detail, and shortly after his stroke, Plaintiff began to have significant duties and responsibilities stripped away from him including but not limited to his leadership duties, team lead duties, facilitation of a system administration monthly meeting as well as other duties.

45. Plaintiff followed up on the detail request to McLaurie and copied other personnel on the email. As a result, McLaurie stormed into Plaintiff's office and yelled "this is how you want to handle this?" or words to that effect. Plaintiff felt threatened and intimidated by these actions.

46. As a result of McLaurie storming into Plaintiff's office, Plaintiff was very upset and his condition was exacerbated and he went to see the Defendant's nurse. As a result, Plaintiff was sent home for three (3) to four (4) days and subsequently was placed on a number of medications by his doctor.

## COUNT ONE
### REHABILITATION ACT of 1973, as amended, 29 U.S.C. § 794, *et seq.* (DISABILITY DISCRIMINATION)

47. Plaintiff incorporates all information and allegations contained m the preceding paragraphs as if fully set forth herein.

48. At all relevant times, the U.S. Department of Agriculture was a recipient of federal funding within the meaning of the Rehabilitation Act.

49. Plaintiff was diagnosed with Anxiety and Depression.

50. Plaintiff is a qualified individual with a disability.

51. Plaintiff s medical condition substantially limits major life activities; namely, his ability to care for himself, ability to concentrate, ability to think, ability to work and sleep.

52. Plaintiff s condition is permanent.

53. At all relevant times, Plaintiff had the necessary knowledge, skills and experience to successfully perform the duties and responsibilities of his position.

54. By its actions alleged herein, Defendant has unlawfully discriminated against Plaintiff on the basis of his disability and failed to make reasonable accommodation to Plaintiff in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, *et seq.*

55. Defendant took adverse action against Plaintiff by denying Plaintiff's request to telework four (4) to five (5) times per week, denied Plaintiff's detail request, placed Plaintiff on work restrictions and stripped Plaintiff of his duties. Any reason proffered for Plaintiff's termination would not be legitimate, and it would be pretext.

56. Defendant was aware that Plaintiff suffered from anxiety and suffered a stroke prior to taking adverse action against Plaintiff by denying Plaintiff's request to telework four (4) to five (5) times per week, denied Plaintiff's detail request, placed Plaintiff on work restrictions and stripped Plaintiff of his duties.

57. Plaintiff has been treated differently and subjected to different terms and conditions of employment due to his disability.

58. Defendant intentionally discriminated against Plaintiff because of his disability.

59. Defendant has limited, segregated and classified Plaintiff in a way which deprives him of employment opportunities because of his disability.

60. Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

61. Plaintiff believes he was subjected to discrimination because of his disability.

62. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior.*

63. Due to Defendant's actions, Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

64. Plaintiff has incurred lost wages and loss of career opportunity now and into the future, all without any negligence being attributed to Plaintiff.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages in excess Five Hundred Thousand Dollars ($300,000.00);

b. Award lost wages;

c. Award back pay and benefits, with interest;

d. Award future wages;

e. Award reasonable attorney fees, costs, and expenses incurred for this action;

f. Award equitable, declaratory, and injunctive relief; and

g. Award such other and further relief as this Honorable Court deems just and proper.

a.   proper.

### COUNT TWO
**(RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 and the REHABILITATION ACT of 1973, as amended, 29 U.S.C. § 794, et seq.**

65. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

66. Plaintiff engaged in protected activity by complaining of discriminatory harassment to Defendant in or about May or early June 2016 and he continued to lodge complaints going forward.

67. Soon after complaining, Plaintiff was subjected to the unlawful treatment and adverse actions alleged throughout this Complaint in violation of Title VII.

68. In particular, in response to and because of Plaintiff's protected activity, Defendant, by and through its agents, servants, and employees took adverse action against him by denying his request to telework four (4) to five (5) times per week, denied Plaintiff's detail request, placed Plaintiff on work restrictions and stripped Plaintiff of significant duties and responsibilities.

69. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of his participation and opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

70. Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff as part of the complaint process through Defendant's EEO office or were otherwise informed about Plaintiff's EEO activity. Plaintiff's supervisor, McLaurie was also informed by his predecessors that Plaintiff engaged in protected activity. Plaintiff's supervisor, Dukeman, was also aware that Plaintiff engaged in protected activity as Plaintiff had previously filed an EEO complaint against her regarding non-selection for a position.

71. The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected activity.

72. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

73. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

74. Similarly situated employees (no known prior protected activity) were not subjected to the same, similar or any adverse treatment.

75. Defendant's unlawful conduct has created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect on bringing discrimination complaints to the fore in violation of Title VII.

76. The reasons proffered by Defendant for its unlawful conduct are pre-textual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

77. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

78. Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his participation and opposition to Defendant's discriminatory conduct.

79. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

80. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional

opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

81. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

82. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award monetary damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

b. Award medical costs and expenses incurred as a result of Defendant's unlawful conduct;

c. Award reasonable attorney fees, costs, and expenses incurred for this action;

d. Order Defendant to institute a policy and procedure to be implemented against discrimination;

e. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

f. Require supervisory training for the supervisors at issue herein;

g. Award equitable, declaratory, and injunctive relief; and

h. Award such other and further relief as this Honorable Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues set forth herein.

Respectfully submitted,

/S/ Donna Williams Rucker
DonnaWilliams Rucker, Esq.
Deputy Managing Partner
Labor & Employment Law Practice Group

TULLY RINCKEY PLLC

815 Connecticut Avenue N.W., Suite 720
Washington, DC 20006
Phone: (202) 787-1900
Fax: (202) 640-2059
Email: DRucker@fedattorney.com

Dated: February 11, 2019                **ATTORNEY FOR PLAINTIFF**